## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>FIRE DEX, LLC,<br><br>Defendant. | Case No.:<br><br>**ADMIRAL INSURANCE COMPANY COMPLAINT**<br><br>**Jury Demand Endorsed Hereon** |

Plaintiff, ADMIRAL INSURANCE COMPANY ("Admiral") by and through its attorneys, allege claims of relief against Defendants, and each of them, as follows:

### INTRODUCTION

1. Admiral is an insurance company which issued two insurance contracts to Fire Dex LLC ("Fire Dex") as the named insured.

2. Admiral Policy CA000018694-01 (01/01/2014 – 01/01/2015) is attached as Exhibit 1.

3. Admiral Policy CA000018694-02 (01/01/2015 – 01/01/2016) is attached as Exhibit 2.

4. The Admiral policies provide primary general liability coverage, according to their terms.

5. Fire Dex was named a defendant in three lawsuits ("Underlying Lawsuits") brought by firefighters and/or their spouses and which allege bodily injuries lawsuits due to occupational exposure to perfluoroalkyl and polyfluoroalkyl compounds ("PFAS"). These lawsuits, with a procedural history more fully described below, are:

   a. *Gibson, et al. v. 3M Co., et al.,* 2284CV00353 (Suffolk, Mass.), with the complaint in this lawsuit attached as Exhibit 3.

   b. *Marchetti, et al. v. 3M Co., et al.*, 1:22-cv-10251 (D. Mass.), with the complaint in this lawsuit attached as Exhibit 4.

   c. *Nordby, et al. v. 3M Co., et al.,* 22CV007071 (Alameda Super., Cal.), with the complaint in this lawsuit attached as Exhibit 5.

6. Plaintiffs in the Underlying Lawsuits allege that Fire Dex and other defendants manufactured, sold, or distributed fire protective clothing or fire suppression foam which contained PFAS.

7. As set forth above, Fire Dex was sued as a defendant in the case captioned, *Gibson, et al. v. 3M Co., et al.,* 2284CV00353 (Suffolk, Mass.) (Exhibit 3)

    a. *Gibson* was removed to federal court on or about April 6, 2022 and became *Gibson, et al. v. 3M Co., et al.,* 1:22-cv-10503 (D. Mass.). No new complaint was filed and Exhibit 3 remains the operative pleading.

    b. On or about April 21, 2022, *Gibson* was conditionally transferred to federal MDL proceedings, *In re Aqueous Film-Forming Foams*, 2:18-MN-02873 (D. S.C.). The case became *Gibson, et al. v. 3M Co., et al.*, 2:22-cv-01303 (D. S.C.). No new complaint was filed and Exhibit 3 remains the operative pleading.

8. As set forth above, Fire Dex was sued as a defendant in the case captioned, *Marchetti, et al. v. 3M Co., et al.*, 1:22-cv-10251 (D. Mass.) (Exhibit 4).

    a. On or about March 4, 2022, *Marchetti* was conditionally transferred to federal MDL proceedings, *In re Aqueous Film-Forming Foams*, 2:18-MN-02873 (D. S.C.). The case became *Marchetti, et al. v. 3M Co., et al.*, 2:22-00710 (D. S.C.). No new complaint was filed and Exhibit 4 remains the operative pleading.

9. As set forth above, Fire Dex was sued as a defendant in the case captioned, *Nordby, et al. v. 3M Co., et al.,* 22CV007071 (Alameda Super., Cal.) (Exhibit 5).

    a. *Nordby* was removed to federal court on or about April 29, 2022 and became *Nordby, et al. v. 3M Co., et al.,* 3:22-cv-02635 (N.D. Cal.). No new complaint was filed and Exhibit 5 remains the operative pleading.

    c. On or about May 19, 2022, *Nordby* was conditionally transferred to federal MDL proceedings, *In re Aqueous Film-Forming Foams*, 2:18-MN-02873 (D. S.C.). The case became *Nordby, et al. v. 3M Co., et al.*, 2:22-cv-01589 (D. S.C.). No new complaint was filed and Exhibit 5 remains the operative pleading.

10. Fire Dex tendered the Underlying Lawsuits to Admiral for defense and/or indemnity.

11. Admiral provided Fire Dex written notice that the Admiral insurance contracts do not cover defense or indemnity for the claims alleged in the Underlying Lawsuits.

12. Admiral brings this lawsuit on the insurance coverage in Admiral policies CA000018694-01 (01/01/2014 – 01/01/2015) and CA000018694-02 (01/01/2015 – 01/01/2016), seeking a declaration that Admiral has no duty to defend or indemnify Fire Dex for the claims alleged in the Underlying Lawsuits.

## JURISDICTION AND VENUE

13. Admiral is incorporated in Delaware with its principal place of business in Arizona.

14. Fire Dex is a limited liability company whose members are Ohio residents.

15.   Admiral and Fire Dex are diverse citizens of different states.

16.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy is between citizens of different states and the amount in controversy is in excess of the sum of $75,000, exclusive of interest and costs.

17.   Plaintiffs in the Underlying Lawsuits seek in excess of $75,000 exclusive of interest and costs as damages, including a $1,000,000 demand in *Marchetti*.

18.   Pursuant to 28 U.S.C. § 1391(1) and 28 U.S.C. §115(a)(1), venue is appropriate in the Northern District of Ohio because jurisdiction is founded upon diversity of citizenship, the insurance policies in issue were issued to Fire Dex in Medina, Ohio where it has its headquarters, and a substantial portion of the transactions or events giving rise to this insurance dispute occurred in Medina, Ohio.

## GENERAL ALLEGATIONS

19.   Plaintiffs in the Underlying Lawsuits are firefighters and their spouses who allege that firefighters were exposed to PFAS in protective clothing called turnout gear and also in fire suppressing foam during the course of the work.

20.   Plaintiffs define "turnouts" as "PFAS-containing materials in protective clothing specifically designed for firefighters." *See* Norby at ¶6 (Ex. 5); Marchetti at ¶6 (Ex. 4).

21.   Plaintiffs allege they wore turnouts in the usual and normal course of performing firefighting duties and job training for firefighting duties.

22.   Plaintiffs allege Fire Dex developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, materials and products containing PFAS in turnouts and/or Class B foams which contains PFAS. *See e.g*, Norby at ¶35 (Ex. 5); Marchetti at ¶41 (Ex. 4).

23.   Complaints allege, "Firefighter Plaintiffs wore turnouts and used Class B foam in the usual and normal course of performing their firefighting duties and training and were repeatedly exposed to PFAS in their workplace." *See* Norby at ¶8 (Ex. 5); Marchetti at ¶8 (slightly different wording) (Ex. 4).

24.   Plaintiff Gibson likewise alleges he "wore turnouts and used Class B foam in the usual and normal course of performing his firefighting duties and training." *See* Gibson at ¶8 (Ex. 3).

25.   Plaintiffs allege various cancers as a disease caused by PFAS exposure during the course of their work as firefighters or their spouse's work as a firefighter.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment Occupational Disease Exclusion)

26. Paragraphs 1 through 25 are incorporated by reference as though fully set forth herein.

27. Both Admiral policies are written with Occupational Disease Exclusion (Absolute) Form AD 67 08 10 13. This form excludes coverage as follows:

   It is agreed there is no coverage afforded under this policy for any "bodily injury" to **any** individual resulting from any occupational or environmental disease arising out of any insured's operations, completed operations or products.

See Id. (emphasis in original) (Ex. 1-2).

28. According to the terms of this Occupational Disease Exclusion, the Admiral policies exclude bodily injury claims by "**any**" individual who alleges bodily injury resulting from an occupational disease arising out of a Fire-Dex product, operation, or completed operation.

29. The exclusion eliminates coverage for these Plaintiffs' claims, all of which allege occupational disease arising from exposure to PFAS contained in Fire Dex products.

30. Plaintiffs are "**any** individual" and they allege bodily injury resulting from occupational disease arising from PFAS exposure to Fire Dex products.

31. Plaintiffs define "turnouts" as "PFAS-containing materials in protective clothing specifically designed for firefighter."

32. Plaintiffs allege, "Firefighter Plaintiffs wore turnouts and used Class B foam in the usual and normal course of performing their firefighting duties and training and were repeatedly exposed to PFAS in their workplace."

33. Plaintiffs allege, "In the course of firefighting training and fire suppression activities, (Plaintiffs) routinely wore turnouts and has used and/or been exposed to Class B foam."

34. Plaintiffs allege various cancers as occupational diseases caused by PFAS exposure.

35. These claims are directly in the terms of Admiral Occupational Disease Exclusion (Absolute) Form AD 67 08 10 13.

36. An actual and justiciable controversy exists between Admiral and Fire Dex because Admiral denied coverage for the claims asserted in the Underlying Lawsuits and Fire Dex has asserted that the claims are covered for defense or indemnity.

37. Admiral seeks declaratory judgment that policies CA000018694-01 (01/01/2014 – 01/01/2015) and CA000018694-02 (01/01/2015 – 01/01/2016) do not provide a duty to defend or indemnify Fire Dex for claims in the Underlying Lawsuits.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment Prior Existing Damages Exclusion)

38.   Paragraphs 1 through 37 are incorporated by reference as though fully set forth herein.

39.   Both Admiral policies are written with Special Exclusions—Joint Form AD 68 88 12 13 (Ex. 1-2). This Form is a "Pre-Existing Damages Exclusion" which eliminates coverage for bodily injury that first occurs prior to the policy period. Specifically, the policies provide, in relevant part:

This insurance does not apply to:

1.   Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

(a)   Which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

(b)   Which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this period.

\*        \*        \*        \*

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

*See* Form AD 68 88 12 13 (Ex. 1-2).

40.   Many plaintiffs in the Underlying Cases allege a work history, and related PFAS exposure, which predates both Admiral policies.

41.   If PFAS exposure is deemed to cause bodily injury during exposure sufficient to trigger the Admiral policies, then this exclusion will apply to any plaintiff in the Underlying Lawsuits who alleges PFAS exposure prior to the January 1, 2014 inception date of Admiral Policy CA000018694-01 or the January 1, 2015 inception date of Admiral Policy CA00000018694-02.

42.   If PFAS exposure is not deemed to cause bodily injury during exposure, then the Admiral policies are written with Commercial General Liability Coverage Form CG 00 01 04 13, which requires bodily injury to occur during the policy period in order to trigger coverage. *See Id.* at I.A.1.b.(2).

43.   If PFAS exposure is not deemed to cause bodily injury during exposure, then the Admiral policies are not triggered without actual bodily injury in their policy periods.

44.   An actual and justiciable controversy exists between Admiral and Fire Dex because

Admiral denied coverage for the claims asserted in the Underlying Lawsuits and Fire Dex has asserted that the claims are covered for defense or indemnity.

45. Admiral seeks declaratory judgment that policies CA000018694-01 (01/01/2014 – 01/01/2015) and CA000018694-02 (01/01/2015 – 01/01/2016) do not provide a duty to defend or indemnify Fire Dex for claims in the Underlying Lawsuits.

**THIRD CAUSE OF ACTION**
**(Declaratory Relief Pollution Exclusion)**

46. Paragraphs 1 through 45 are incorporated by reference as though fully set forth herein.

47. Both Admiral policies are written with Total Pollution Exclusion With Hostile Fire Exception Form CG 21 55 09 99.  This form excludes, in relevant part:

> "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

*See* Id. at f.(1) (Ex. 1-2).

48. The term "pollutants" is defined in the Commercial General Liability Form CG 00 01 04 13 as "solid, liquid, caseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *See* Id. at V.15.

49. The Admiral policies define "pollutant" to include "chemicals." *See* Form CG 00 01 04 13, V.15.

50. Plaintiffs allege bodily injuries arising from PFAS exposure and expressly allege that "PFAS are human-made chemicals consisting of a chain of carbon and fluorine atoms." *See e.g.* Norby at ¶3 (Ex. 5); Marchetti at ¶3 (Ex. 4); Gibson at ¶3 (Ex. 3).

51. Plaintiffs allege an entire section of their complaints detailing how "The Chemical Structure of PFAS Makes Them Harmful to Human Health." *See* Norby at ¶¶85-90 (using the term "forever chemical") (Ex. 5); Marchetti at ¶¶89-94 (same) (Ex. 4); Gibson at ¶¶70-76 (same) (Ex. 3).

52. Plaintiffs allege that PFAS is a "chemical" under the express terms of the pollutant definition in the Admiral policies, and therefore within the pollution exclusion.

53. An actual and justiciable controversy exists between Admiral and Fire Dex because Admiral denied coverage for the claims asserted in the Underlying Lawsuits and Fire Dex has asserted that the claims are covered for defense or indemnity.

54. Admiral seeks declaratory judgment that policies CA000018694-01 (01/01/2014 – 01/01/2015) and CA000018694-02 (01/01/2015 – 01/01/2016) do not provide a duty to

defend or indemnify Fire Dex for claims in the Underlying Lawsuits.

## FOURTH CAUSE OF ACTION
### (Declaratory Relief Punitive Damages Exclusion)

55.     Paragraphs 1 through 54 are incorporated by reference as though fully set forth herein.

56.     Both Admiral policies are written with Punitive Damage Exclusion Form AD 66 01 95. This form excludes coverage for punitive damages, providing:

> It is agreed that the insurance afforded by this policy does not apply to punitive or exemplary damages awarded against the Insured.

*See* Id. (Ex. 1-2).

57.     Plaintiffs in the Underlying Lawsuits seek punitive or exemplary damages in their prayers for relief.

58.     An actual and justiciable controversy exists between Admiral and Fire Dex because Admiral denied coverage for punitive or exemplary damages asserted in the Underlying Lawsuits and Fire Dex has asserted that the claims are covered for defense or indemnity.

59.     Admiral seeks declaratory judgment that policies CA000018694-01 (01/01/2014 – 01/01/2015) and CA000018694-02 (01/01/2015 – 01/01/2016) do not provide a duty to defend or indemnify Fire Dex for claims in the Underlying Lawsuits.

## PRAYER FOR RELIEF

Wherefore, Admiral prays for judgment determining that the two Admiral policies do not provide for defense or indemnity for the claims in the Underlying Lawsuits, along with such costs, interest fees, or other relief allowable at law or in equity.

Respectfully Submitted,

*s/ David W. Walulik*
David W. Walulik (Ohio 076079)
FROST BROWN TODD LLC
301 E. Fourth Street
Suite 3300
Cincinnati, OH 45202
(513) 651-6877
Dated:  June 21, 2022                                          dwalulik@fbtlaw.com

7

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*s/ David W. Walulik*

David W. Walulik (Ohio 076079)
FROST BROWN TODD, LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Phone: (513) 651-6877
dwalulik@fbtlaw.com

0119409.0755167  4867-7196-8033v1