IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | ) | Case No.: 1:22-cv-01087-PAB |
| Plaintiff | ) ) ) | Judge Pamela A. Barker |
| vs. | ) ) | |
| FIRE-DEX, LLC, | ) ) | |
| Defendant | ) ) ) | |

## DEFENDANT FIRE-DEX, LLC'S MOTION TO DISMISS

Now comes Defendant Fire-Dex, LLC ("Defendant" or "Fire-Dex"), by and through counsel, and hereby moves the Court to dismiss this action for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). This Court should decline to exercise its jurisdiction over this declaratory judgment action in which Plaintiff Admiral Insurance Company ("Plaintiff" or "Admiral") seeks a determination of its duty to defend or indemnify Fire-Dex in three cases consolidated in multi-district litigation pending in the U.S. District Court for the District of South Carolina. Resolution of the insurance coverage issues in this case involves novel and unsettled matters of state law in which a state court is the preferred forum for resolution. Therefore, consistent with Sixth Circuit precedent, the Court should dismiss this case.

A memorandum in support of Defendant's motion is attached and incorporated herein.

Respectfully Submitted,

BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC

*/s/ Justin S. Greenfelder*
Justin S. Greenfelder (Ohio Bar #0077924)
Jude B. Streb (Ohio Bar #0071529)
4277 Munson St. NW
Canton, Ohio 44718
Telephone: (330) 492-8717
Fax: (330) 492-9625
Email: jgreenfelder@bdblaw.com
       jstreb@bdblaw.com

**Attorneys for Defendant**
**Fire-Dex, LLC**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | ) | Case No.: 1:22-cv-01087-PAB |
| | ) | |
| Plaintiff | ) | Judge Pamela A. Barker |
| | ) | |
| vs. | ) | |
| | ) | |
| FIRE-DEX, LLC, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Plaintiff Admiral Insurance Company ("Plaintiff" or "Admiral") is not entitled to a federal forum for this state law insurance coverage dispute. The decision whether to accept jurisdiction under the Declaratory Judgment Act is firmly committed to this Court's discretion. In this case, that discretion should be exercised to decline jurisdiction and dismiss this case in favor of the preferred forum – an Ohio state court.

Defendant Fire-Dex, LLC ("Defendant" or "Fire-Dex") was named as a defendant in three cases – two originally filed in Massachusetts and one in California – brought by firefighters alleging that Fire-Dex and several other defendants manufactured, sold, or distributed fire protection clothing or fire suppression foam which contained per-and polyfluoroalkyl substances ("PFAS") causing bodily injury. Those cases were transferred and consolidated into federal multi-district litigation ("MDL") currently pending in the U.S. District Court for the District of South Carolina. Admiral issued commercial general liability insurance policies to Fire-Dex which were effective from January 1, 2014 to January 1, 2016. Fire-Dex tendered the underlying actions to each of its general liability insurers over the last 25 years for defense and/or indemnity. All of the

insurers agreed to defend Fire-Dex under a reservation of rights with the exception of Admiral. Instead, Admiral filed a declaratory judgment action in this Court relying primarily on an "occupational disease exclusion" in its policy which it believes defeats any coverage obligations.

No Ohio court has ever rendered a decision on the applicability of an occupational disease exclusion in an insurance policy. In fact, only one state court has ever spoken on this issue. And no court has ever considered whether this exclusion applies to products containing PFAS used in the course of one's occupation. This exclusion is rarely included in commercial insurance policies and even more rarely invoked. However, as PFAS is contained in many different products in many different industries, the implications of this decision are vast and could have a significant effect on the scope of insurance coverage available to manufacturers for third-party bodily injury claims, especially where PFAS is involved. This type of insurance coverage dispute is precisely the type of declaratory judgment action repeatedly recognized by the Sixth Circuit to be the province of state law and the prerogative of state courts. *See e.g., Cardinal Health, Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 799-800 (6th Cir. 2022). States are responsible for insurance law and regulation, and state courts are best situated to identify and define the contours of their own laws and public policies concerning insurance. Ohio has a strong interest in developing the guardrails of liability insurance coverage relating to the manufacture of products containing PFAS. The Ohio General Assembly recently passed legislation regarding the use of PFAS-containing chemicals in firefighting foam. This action belongs in an Ohio state court. This Court should decline jurisdiction and dismiss this case.

**II.    RELEVANT BACKGROUND**

Fire-Dex is a Delaware limited-liability company with its principal place of business in Medina, Ohio. (Complaint, ECF No. 1, ¶14.) Fire-Dex manufactures personal protective

2

equipment ("PPE") for firefighters, comprised primarily of turnout gear ("turnouts") worn by firefighters to protect them while fighting fires. (*See* ECF No. 1-5 at ¶25; ECF No. 1-6 at ¶41; ECF No. 1-7 at ¶35.) Fire-Dex also manufactures accessories including boots, hoods, gloves, pants, and helmets. Fire-Dex does not manufacture PFAS-containing compounds or insert PFAS or any PFAS-containing chemicals into any of these products. However, some of the components used in the manufacture of these products – which Fire-Dex purchases from other material suppliers – may contain some amounts of PFAS. Fire-Dex's products comply with all applicable governmental regulations and industry standards. Fire-Dex does not manufacture or sell any fire suppression foam, including Class B firefighting foams.

On February 15, 2022, three lawsuits were filed naming Fire-Dex as one of many defendants alleging bodily injury claims related to alleged exposure to PFAS-containing materials in fire suppression foam and turnout gear:

- Fire-Dex was named as one of 24 defendants in an action filed by 14 Boston-area firefighters in the U.S. District Court for the District of Massachusetts. *See Marchetti, et al., v. 3M Company, et al.*, Case No. 1:22-cv-10251 (the "Marchetti Action"). The Marchetti Action alleged that the plaintiff-firefighters had suffered bodily injury in the form of cancer and other diseases as a result of exposure to PFAS allegedly contained in their turnout gear and fire suppression foam. On March 4, 2022, the Marchetti Action was transferred to the Aqueous Film-Forming Foams (AFFF) Product Liability Litigation, MDL No. 2:18-mn-02873 (D.S.C.), pending in the U.S. District Court for the District of South Carolina (the "AFFF MDL"), as Case No. 2:22-cv-710-RMG (D.S.C.). (ECF No. 1 at ¶8; ECF No. 1-6.)

- Fire-Dex was named as one of 29 defendants in an action filed in Alameda County, California, by nine firefighters from Alameda and Sacramento Counties. *See Nordby, et al. v. 3M Company et al.*, Alameda (CA) Super. Ct. No. 22CV007071 (the "Nordby Action"). The Nordby Action was removed to the U.S. District Court for the Northern District of California on April 29, 2022, and on May 19, 2022, was transferred to the AFFF MDL as Case No. 2:22-cv-01589-RMG (D.S.C.). (*Id.* at ¶9; ECF No. 1-7.)

- Fire-Dex was named as one of 26 defendants in an action filed by a single firefighter in Suffolk County, Massachusetts. *See Gibson, et al. v. 3M Company, et al.*, Suffolk (MA) No. 2284CV00353 (the "Gibson Action"). The Gibson Action was removed to the U.S. District Court for the District of Massachusetts on April 6, 2022, and on April 21, 2022,

3

was transferred to the AFFF MDL as Case No. 2:22-cv-01303-RMG (D.S.C.). (*Id*. at ¶7; ECF No. 1-5.)

There are over 2,000 member cases currently in the AFFF MDL. Fire-Dex was named as a defendant in only the Marchetti Action, Nordby Action, and Gibson Action (collectively, the "Underlying Lawsuits"). On May 19, 2022, Fire-Dex filed a General Denial and Affirmative Defenses in the Underlying Lawsuits. (AFFF MDL ECF No. 2360.) All of the Underlying Lawsuits are currently inactive. None of the cases consolidated in the AFFF MDL involving turnout gear have been made part of any bellwether case.

Shortly after becoming aware of each of the Underlying Lawsuits, Fire-Dex tendered the actions to each of their commercial general liability insurers, including Admiral, and umbrella/excess insurers over the last 25 years. (ECF No. 1 at ¶10.) Admiral issued two commercial policies to Fire-Dex which were effective from January 1, 2014 to January 1, 2016. (*Id*. at ¶¶2-4; ECF No. 1-1, 1-2.) Several weeks passed without Admiral providing a formal coverage letter to Fire-Dex.

On June 21, 2022, Admiral filed the present declaratory judgment action asserting jurisdiction under 28 U.S.C. § 1332(a)(1) under diversity of citizenship. (*Id*. at ¶¶13-17.)[1] Admiral's Complaint includes four declaratory judgment counts corresponding to four policy exclusions that it alleges defeat coverage: the occupational disease exclusion (¶¶26-37), the "prior existing damages" exclusion (¶¶38-45), the "pollution" exclusion (¶¶46-54), and the "punitive damages" exclusion (¶¶55-59). No federal claims are alleged. Fire-Dex now moves to dismiss this case for the reasons set forth herein.

---

[1] Admiral alleges in its Complaint that it provided written notice to Fire-Dex that it was denying coverage for the claims alleged in the Underlying Lawsuits. (ECF No. 1 at ¶11.) However, at the time the Complaint was filed, Admiral had done no such thing. Fire-Dex's first notice that Admiral was denying its claim was the filing of this lawsuit. Two days after Admiral filed its Complaint, Admiral's counsel sent an undated letter to Fire-Dex which largely copied the allegations in its Complaint. A copy of this letter, including the cover email establishing the date it was sent, can be provided to the Court upon request.

4

**III.    LAW AND ARGUMENT**

    **A.    Legal Standard**

Exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory. *Bituminous Cas. Corp. v. J&L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173 (1942)). The granting of a declaratory judgment rests in the sound discretion of the district court. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir.1984) (citations and quotation marks omitted). The district court is "under no compulsion to exercise that discretion." *Brillhart*, 316 U.S. at 494. It is well-settled that diversity of citizenship and a sufficient amount in controversy do not entitle an insurer to a federal forum in a declaratory judgment action. *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007). Instead, the Declaratory Judgment Act grants federal courts "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." *Id*.

Federal courts addressing requests for declaratory relief concerning insurance coverage must specifically consider whether a discretionary exercise of jurisdiction is appropriate, as such questions are typically reserved for state law. *See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 273 (6th Cir. 2007) ("[I]ssues of insurance contract interpretation are questions of state law with which the state courts are more familiar and, therefore, better able to resolve.") (citations and quotation marks omitted).

In determining whether to exercise its discretion, the district court considers the following "*Grand Trunk*" factors:

    (1) Whether the declaratory action would settle the controversy;

    (2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

    (3) Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata;

    (4) Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; and

    (5) Whether there is an alternative remedy which is better or more effective.

*Grand Trunk*, 746 F.2d at 326. The fourth factor – the state jurisdictional encroachment factor – itself entails consideration of three sub-factors:

    (1) Whether the underlying factual issues are important to an informed resolution of the case;

    (2) Whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

    (3) Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Travelers*, 495 F.3d at 271. The Sixth Circuit has "never assigned weights to the *Grand Trunk* factors when considered in the abstract," and the factors are not always considered equally. *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

    The consideration of these factors in the present case weighs against the exercise of jurisdiction over Admiral's declaratory judgment action.

    **B.    Factor One is Neutral: A federal or Ohio declaratory judgment would settle the controversy.**

    The first *Grand Trunk* factor can be very valuable when considering a declaratory judgment action brought in parallel to existing litigation, because a declaratory judgment may have no effect – or even a deleterious effect – on the resolution of that litigation. *See Bituminous*, 373 F.3d at 813-14 (federal court and state court issued inconsistent rulings on underlying plaintiff's employment status, resulting in abuse of discretion by federal court in resolving declaratory judgment action). But here, where no parallel state court litigation exists between Admiral and

6

Fire-Dex, this factor provides almost no insight into the fundamental question of whether a declaration by *this Court* will settle the controversy.

A declaration of rights regarding the applicability of the policy exclusions would settle the dispute between the parties. However, there is no basis for a *federal* declaratory judgment action when a *state* declaratory judgment could accomplish the same result, and a state court is in a better position to do so. As explained below, the questions presented in Admiral's declaratory action involve novel and unsettled issues of state law in an area of law (insurance coverage) which is reserved to the states. Therefore, this factor carries little weight in the Court's analysis.

      **C.      Factor Two is Neutral or Favors Dismissal: A federal declaratory judgment would be less useful than a state court declaratory judgment in clarifying the legal relations between the parties.**

The second *Grand Trunk* factor "is closely related to the first factor and is often considered in connection with it." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). Just as with the first factor, where there is no parallel litigation between the parties, this second factor provides no insight into the wisdom of exercising jurisdiction over a declaratory judgment action. Moreover, because the law in this area is unsettled and still developing, a federal court declaration may not "serve a useful purpose." *General Cas. Co. of Wisconsin v. Joseph*, No. 2:10-cv-483, 2011 WL 4367516, at *9 (S.D.Ohio Sept. 19, 2011) (considering potential conflict of law in determining whether a federal declaratory judgment would be "clarifying" or "serve a useful purpose"). Therefore, the second factor is either neutral or favors dismissal. In any event, this factor should be given very little weight.

      **D.      Factor Three is Neutral or Favors Dismissal: The Court could reasonably find that Admiral engaged in procedural fencing.**

The third *Grand Trunk* factor considers whether the party seeking to invoke federal jurisdiction has done so to engage in "procedural fencing," which refers to "a range of tactics that

7

courts regard as unfair or unseemly," including selecting a forum to start a race for res judicata. *Hoey*, 773 F.3d at 761. In *Cardinal Health*, the Sixth Circuit stopped short of adopting a per se rule regarding the weight to afford this factor when there is no evidence of procedural fencing. *Cardinal Health*, 29 F.4th at 797. However, the Court acknowledged its most recent precedent which held that "[i]f there is no evidence of procedural fencing, we often find that the factor is neutral." *Id.* (quoting *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 399 (6th Cir. 2019)). The Court further found that it is "[c]onsistent with [our] authority" for a district court "to give this factor little weight in its balancing of the factors." *Id.* (quoting *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 Fed.Appx. 431, 439 (6th Cir. 2018)).

Here, Admiral filed its action in federal court prior to informing Fire-Dex of its coverage decision. It could be inferred that Admiral did so in order to win the race to the courthouse should Fire-Dex seek to file its own action in state court challenging Admiral's coverage decision. This is the type of "race for res judicata" that the Sixth Circuit indicated should be considered under this factor. *Hoey*, 773 F.3d at 761. If the Court concludes that Admiral played "procedural games" by filing this action in a federal forum before issuing its formal coverage decision in order to secure what it perceives to be a more favorable forum, this factor would support dismissal. *Id.* At the very minimum, however, this factor is neutral and certainly would not favor exercising jurisdiction over this matter.

      **E.**      **Factor Four Strongly Favors Dismissal: Federal court resolution of this action risks federal-state friction and encroachment upon state court jurisdiction due to the novel and unsettled nature of pertinent state law.**

The fourth *Grand Trunk* factor asks whether exercising jurisdiction would increase federal-state friction or risk impinging upon state court jurisdiction. This factor "reflect[s] concerns about

8

principals of federalism." *Cardinal Health*, 29 F.4th at 798 (quoting *Hoey*, 773 F.3d at 761). In the present case, this factor strongly favors dismissal.

The first sub-factor "focuses on whether the state court's resolution of the factual issues in this case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. While there is no underlying state court case between Admiral and Fire-Dex, the Sixth Circuit recently held that comity concerns are "not so narrow." *Cardinal Health*, 29 F.4th at 799. In *Cardinal Health*, an opioid distributor sought a defense and indemnity from its insurers in dozens of lawsuits which were transferred to the federal opioid multi-district litigation currently pending before Judge Polster. The insurers denied coverage, and Cardinal Health filed suit in Ohio state court. The insurers removed the case to federal court, and Cardinal Health moved to remand and asked the district court to decline jurisdiction due to the unsettled status of state law on the scope of insurance coverage for distributors sued as part of the opioid litigation. The district court granted the motion to remand. In its opinion affirming the district court's decision not to exercise jurisdiction, the Sixth Circuit explained that regardless of whether there is parallel state court litigation between the parties, there were "dynamic questions and theories of liability under Ohio state law [which] implicate concerns of comity" and should first be decided by Ohio state courts. *Id*. at 799.

The same concerns are present here. While both Ohio state and federal courts have heard many cases involving alleged bodily injury or disease incurred as a result of exposure to PFAS-containing products over the last few decades, no body of case law has been developed regarding insurance coverage for such claims or losses. This is especially true as it relates to claims arising from exposure to PFAS as part of one's occupation. Thus, comity concerns weigh against the exercise of jurisdiction in this case.

9

The second sub-factor requires the court to consider whether state courts are in a better position to evaluate novel questions of state law. *Cardinal Health*, 29 F.4th at 799 (quoting *Flowers*, 513 F.3d at 560). The Sixth Circuit has consistently concluded that a district court should decline jurisdiction where unresolved insurance coverage issues exist. *See Mass. Bay*, 759 F.Appx. at 440; *Bituminous*, 373 F.3d at 815-16; *Travelers*, 495 F.3d at 272; *Flowers*, 513 F.3d at 561; *Cardinal Health*, 29 F.4th at 800-801. The same outcome is appropriate here. In the Underlying Lawsuits, the plaintiff-firefighters allege that they suffered bodily injury in the form of cancer or other diseases as a result of exposure to PFAS in their turnout gear or fire suppression foam. (*See generally*, ECF Nos. 1-5, 1-6, 1-7.) In its Complaint, Admiral broadly reads the "occupational disease exclusion" in its policy to preclude coverage for any claims alleging a disease resulting from the claimant's occupation, regardless of whether the claimant was employed by the insured or not. (ECF No. 1 at ¶¶26-37.) "Occupational disease" is not a defined term in Admiral's policies. However, the Ohio Revised Code defines "occupational disease" as a term of art in workers-compensation law such that it applies to a disease contracted in the course of employment with one's employer. *See* Ohio Rev. Code § 4123.01(F). *See also, State ex rel. Ohio Bell Telephone Co. v. Krise*, 42 Ohio St.2d 247, 327 N.E.2d 756 (1975), syllabus (establishing three-pronged test defining an occupational disease).

No Ohio court has concluded that an "occupational disease" could be sustained outside of the employer-employee context. Likewise, no Ohio court has construed an "occupational disease exclusion" in an insurance policy to determine whether it applies as broadly as Admiral believes. In fact, only one state court has expressly ruled on this issue. *See R.T. Vanderbilt Co. v. Hartford Accident and Indem. Co.*, 216 A.3d 629 (Conn. 2019).

Admiral also seeks a declaration on the application of the "pollution" exclusion within its policy as grounds for defeating coverage. (ECF No. 1 at ¶¶ 46-54.) Admiral alleges that Fire-Dex's turnouts should be characterized as "pollutants" simply because they may contain some amount of PFAS. The Ohio Supreme Court has considered the "Absolute Pollution Exclusion" and narrowly defined its applicability. In *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 2001-Ohio-1607, 757 N.E.2d 329, the Ohio Supreme Court reviewed this exclusion in the context of carbon monoxide from a faulty residential heater. The "genesis" of this exclusion, according to the Court, was to exclude intentional polluters from protection from the results of their improper or illegal conduct. The Court found that the pollution exclusion did not clearly and unambiguously preclude coverage based on carbon monoxide exposure. *Id.* at 549.

In *Lumbermens Mut. Cas. Co. v. S-W Indus., Inc.*, 39 F.3d 1324 (6th Cir. 1996), the Sixth Circuit analyzed the "dispersal" language in the pollution exclusion and concluded that it "strains the plain meaning, and obvious intent, of the language to suggest that these fumes, as they went from [the] container to [the injured party's] lungs, had somehow been 'discharged, dispersed, released, or escaped.'" *Id.* at 1336. The *Lumbermens* court defined each of the similar terms (discharge, dispersal, release or escape) to conclude that the confinement of the fumes in the immediate work area did not fit those definitions, even if the injurious product was a "pollutant." *Id.* The Court also addressed its "obvious" understanding of the purpose of the pollution exclusion:

> Without belaboring the obvious, we hold that this exclusion is intended to shield the insurer from the liabilities of the insured to outsiders, either neighboring landowners or governmental entities enforcing environmental laws, rather than injuries caused by toxic substances that are still confined within the areas of their intended use.

*Id. See also*, *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178 (6th Cir. 1999) (holding that movement of fumes from toxic chemical used by insured was not "discharge, dispersal, seepage,

11

migration, release or escape" within terms of total pollution exclusion).[2] While Fire-Dex strongly believes that an Ohio court would extend the same reasoning to PFAS-containing products and conclude that the pollution exclusion does not apply, this remains a developing issue of Ohio law. *See Citizens Ins. v. Lanly Co.*, Nos. 1:07-cv-241, 1:07-cv-467, 1:07-cv-469, 2007 WL 3129783 (N.D.Ohio Oct. 23, 2007) (Polster, J.) (declining to exercise jurisdiction over insurance coverage dispute concerning the applicability of a pollution exclusion).

Moreover, the Ohio General Assembly recently passed legislation regulating the use of PFAS compounds in fire suppression foam. *See* Ohio Rev. Code § 3737.52, eff. June 13, 2022 (prohibiting the use of class B firefighting foam containing intentionally added PFAS chemicals for testing and training purposes). Undoubtedly, questions will continue to emerge regarding the scope of insurance coverage available to manufacturers of products containing PFAS. Accordingly, this sub-factor weighs strongly against the exercise of jurisdiction over Admiral's declaratory action.

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Cardinal Health*, 29 F.4th at 800. Here, the regulation of insurance is a matter of state law, and the creation of policy regarding the application of insurance coverages to certain types of claims should be left to state courts. "States regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous*, 373 F.3d at 815 (quoting *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279

---

[2] One court recently considered the applicability of the pollution exclusion to a firefighter's claim that he was injured by exposure to AFFF. In *Colony Ins. Co. v. Buckeye Fire Equipment Co.*, No. 3:19-cv-00534-FDW-DSC, 2020 WL 6152381 (W.D.N.C. Oct. 20, 2020), *aff'd*, 2021 WL 5397595 (4th Cir. Nov. 18, 2021 ) (per curiam), the court held that the terms "discharge, dispersal, release or escape" used in the pollution exclusion apply only when the pollutant is released into the environment (i.e., "traditional environmental pollution") and not through direct exposure of AFFF. Thus, the exclusion did not apply and coverage was owed.

(6th Cir.1990)); *see also, Travelers*, 495 F.3d at 272; *Cole's Place*, 936 F.3d at 401; *Cardinal Health*, 29 F.4th at 800; *Hoey*, 773 F.3d at 760 ("A district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law…").

Another consideration within the third sub-factor is whether federal common law or statutory law would favor a federal resolution of the case. *Flowers*, 513 F.3d at 560. The present dispute involves only state substantive law. No federal claims or issues are present.

In sum, each of the three sub-factors to the fourth *Grand Trunk* factor weigh strongly against the exercise of jurisdiction in this case due to the novel and unsettled issues of Ohio law involved in Admiral's declaratory action.

### F. Factor Five Strongly Favors Dismissal: An Ohio declaratory judgment is a superior remedy under the circumstances.

Dismissal of this case in favor of an action in state court is not just merely an "alternative remedy," but a "better and more effective remedy." Ohio law allows interested parties to file a declaratory judgment action to obtain a declaration of its rights. Ohio Rev. Code § 2721.01 *et seq*. Because of the developing and unsettled nature of Ohio law on questions of insurance coverage for manufacturers of PFAS-containing products and the application of both the occupational disease exclusion and pollution exclusion, a declaratory action in Ohio state court is a far superior remedy. *See Cardinal Health*, 29 F.4th at 801. As the Sixth Circuit held in *Bituminous*, "[w]e question the need for declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816-817 (internal punctuation omitted). Accordingly, this factor weighs strongly against the exercise of jurisdiction.

**IV.    CONCLUSION**

This declaratory judgment action implicates novel questions of state insurance law. Ohio courts have never spoke on the scope of applicability of an "occupational disease exclusion" in a commercial policy. Moreover, while numerous cases have considered the "pollution exclusion," none have done so in the context of whether PFAS-containing products are considered pollutants when used as intended. The fourth and fifth *Grand Trunk* factors weigh strongly against the exercise of jurisdiction, while the other factors are either neutral or of little value given the circumstances of this case. Under these circumstances, the Sixth Circuit counsels district courts to refrain from exercising jurisdiction over federal insurance coverage actions based on diversity jurisdiction and to dismiss the case without prejudice. That is precisely what should occur here.

        Respectfully Submitted,

        BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC

        */s/ Justin S. Greenfelder*
        Justin S. Greenfelder (Ohio Bar #0077924)
        Jude B. Streb (Ohio Bar #0071529)
        4277 Munson St. NW
        Canton, Ohio 44718
        Telephone: (330) 492-8717
        Fax: (330) 492-9625
        Email: jgreenfelder@bdblaw.com
                jstreb@bdblaw.com

        **Attorneys for Defendant**
        **Fire-Dex, LLC**

## CERTIFICATION OF COUNSEL

Now comes undersigned counsel for Defendant Fire-Dex, LLC, and hereby certifies to the Court, in compliance with Loc.R. 7.1(f), that the above-captioned case has not been assigned to a track, and that the Memorandum in Support of Defendant's Motion to Dismiss adheres to the page limitation set forth in the above-cited Rule for such unassigned cases.

    */s/ Justin S. Greenfelder*
Justin S. Greenfelder (Ohio Bar #0077924)
Jude B. Streb (Ohio Bar #0071529)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the 15th day of August, 2022.  Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing.

*/s/Justin S. Greenfelder*
Justin S. Greenfelder (Ohio Bar #0077924)
Jude B. Streb (Ohio Bar #0071529)

4876-1598-4430, v. 1