IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **ADMIRAL INSURANCE COMPANY,** | **CASE NO. 1:22-CV-1087-PAB** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **FIRE-DEX, LLC,** | |
| | **MEMORANDUM OPINION AND** |
| **Defendant.** | **ORDER** |

Currently pending is Defendant Fire-Dex, LLC's Motion to Dismiss Plaintiff's Complaint. (Doc. No. 8.) Plaintiff Admiral Insurance Company filed an Opposition to Fire-Dex's Motion, to which Fire-Dex replied. (Doc. Nos. 9, 10.) For the following reasons, Fire-Dex's Motion to Dismiss is GRANTED.

**I. Background**

Admiral brings this declaratory judgment action against Defendant Fire-Dex. (Amended Complaint, Doc. No. 19.) Fire-Dex is a limited liability company that manufactures firefighting equipment. (*Id.* at ¶ 16.) Admiral issued two insurance contracts to Fire-Dex as the named insured, Admiral Policy CA000018694-01 (effective January 1, 2014 to January 1, 2015) and Admiral Policy CA000018694-02 (effective January 1, 2015 to January 1, 2016). (*Id.* at ¶¶ 1-3; *see also* Ex. 1 Admiral Policy CA000018694-01, Doc. No. 1-3; Ex 2. Admiral Policy CA000018694-02, Doc. No. 1-4.)

**A. Underlying Lawsuits**

Fire-Dex was named as a defendant in four underlying lawsuits brought by firefighters and/or their spouses. (*Id.* at ¶ 5.) In each of these underlying lawsuits, the plaintiffs allege that Fire-Dex

and other defendants manufactured, sold, or distributed fire protective clothing, gear, and/or fire suppression foam that contained perfluoroalkyl and polyfluoroalkyl compounds. (*Id.* at ¶¶ 5, 6.) These compounds are more commonly known as "PFAS." (*Id.*) The plaintiffs allege that they were exposed to PFAS during the course of their firefighting work or their spouse's firefighting work via Fire-Dex's protective gear, which contained PFAS. (*Id.* at ¶¶ 22-29.) The plaintiffs allege that this exposure to PFAS caused them and/or their spouses to develop various cancers. (*Id.*) All four of these underlying lawsuits have been transferred to an ongoing federal MDL proceeding, *In re Aqueous Film-Forming Foams*, 2:18-MN-02873 (D.S.C.). (*Id.* at ¶¶ 7-10.)

Fire-Dex tendered these underlying lawsuits to Admiral for defense and/or indemnity. (*Id.* at ¶ 11.) However, Admiral provided Fire-Dex with written notice that the relevant Admiral policies do not cover defense or indemnity for the claims alleged in the underlying lawsuits. (*Id.* at ¶ 12.) Admiral filed the instant federal declaratory action seeking a declaration that it has no duty to defend and/or indemnify Fire-Dex for the claims alleged in these underlying lawsuits. (*Id.* at ¶ 13.)

### B. The Admiral Policies

Admiral issued two insurance contracts to Fire-Dex as the named insured, CA000018694-01 and CA000018694-02. (Doc. Nos. 1-3, 1-4.) Both policies provided primary general liability coverage to Fire-Dex. (Doc. No. 19, ¶ 4.) Additionally, both policies are comprised of several identical forms that are relevant to the instant matter, including the Occupational Disease Exclusion (Absolute) Form, the Pre-Existing Damages Exclusion Form, the Total Pollution Exclusion With Hostile Fire Exception Form, and the Punitive Damages Exclusion Form. (Doc. Nos. 1-3, 1-4.) Admiral alleges that each of these four policy exclusions, set forth below, operates to preclude

coverage to, and any duty to defend or indemnify, Fire Dex, for the claims set forth in the underlying lawsuits. (Doc. No. 19, ¶¶ 30-63.)

The Occupational Disease Exclusion (Absolute) Form (AD 67 08 10 13) reads as follows:

It is agreed there is no coverage afforded under this policy for any "bodily injury" to **any** individual resulting from any occupational or environmental disease arising out of any insured's operations, completed operations or products.

(Doc. No. 1-3, PageID# 64; Doc. No. 1-4, PageID# 136.)

The Pre-Existing Damages Exclusion Form (AD 68 88 12 13) reads, in relevant part, as follows:

This insurance does not apply to:

**1.** Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

> **(a)** which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or
>
> **(b)** which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period.

. . .

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

(Doc. No. 1-3, PageID# 60; Doc. No. 1-4, PageID# 132.)

The Total Pollution Exclusion With Hostile Fire Exception Form (CG 21 55 09 99) reads, in relevant part, as follows:

This insurance does not apply to:

**f. Pollution**

3

> **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(Doc. No. 1-3, PageID# 35; Doc. No. 1-4, PageID# 107.) The policies define "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Doc. No. 1-3, PageID# 32; Doc. No. 1-4, PageID# 100.)

Finally, the Punitive Damages Exclusion Form (AD 66 01 01 95) reads as follows:

> It is agreed that the insurance afforded by this policy does not apply to punitive or exemplary damages awarded against the Insured.

(Doc. No. 1-3, PageID# 49; Doc. No. 1-4, PageID# 121.)

### C. Procedural History

Admiral filed its initial complaint on June 21, 2022. (Doc. No. 1.) Fire-Dex filed the instant Motion to Dismiss on August 15, 2022. (Doc. No. 8.) Admiral filed its Opposition on September 14, 2022, to which Fire-Dex replied on September 28, 2022. (Doc. Nos. 9, 10.)

On October 12, 2022, Admiral filed a motion for leave to supplement its complaint pursuant to Fed. R. Civ. P. 15(d) seeking to incorporate additional allegations about a fourth underlying lawsuit. (Doc. No. 11.)

In the Court's review of Fire-Dex's Motion, it came to the Court's attention that Admiral alleged that Fire-Dex's sole member was an Ohio resident, not an Ohio citizen. (*See* Doc. No. 14.) Concerned that Admiral had not yet sufficiently pleaded diverse citizenship (as opposed to residence) between it and Fire-Dex, the Court ordered Admiral to show cause why the case should not be dismissed for lack of subject matter jurisdiction. (*Id.*) Shortly thereafter, Admiral filed a motion for leave to amend its complaint to properly allege diverse citizenship, and therefore complete diversity,

between it and Fire-Dex, as well as to incorporate its allegations regarding the fourth underlying lawsuit against Fire-Dex. (Doc. No. 15.) The Court granted Admiral's motion to amend its complaint on October 28, 2022. (Doc. No. 18.) Admiral filed its Amended Complaint on October 28, 2022, which properly alleged that Fire-Dex's sole member was an Ohio citizen, and incorporated allegations about the fourth underlying lawsuit against Fire-Dex. (Doc. No. 19.) On October 31, 2022, the parties jointly stipulated that the filing of Admiral's Amended Complaint had no effect on Fire-Dex's pending Motion and that Fire-Dex was not required to refile or otherwise plead in response to Admiral's Amended Complaint subject to this Court's ruling on the merits of Fire-Dex's Motion. (Doc. No. 20, ¶ 6.) Thus, Fire-Dex's Motion to Dismiss is now ripe and ready for review.

## II.     Standard of Review

Fire-Dex moves to dismiss Admiral's Complaint pursuant to Fed. R. Civ. P. 12(b)(1). Fed. R. Civ. P. 12(b)(1) provides for dismissal when a court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County,* 847 F.3d 812, 816-17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg.*

*LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME, Local 11*, 397 F. Supp. 3d 1076, 1081-82 (S.D. Ohio 2019).

By contrast, a factual attack "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church,* 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Fire-Dex urges this Court to exercise its discretion, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and decline to exercise jurisdiction over Admiral's declaratory judgment claims. (Doc. No. 8.) Under the Declaratory Judgment Act, litigants do not possess an absolute right to bring a lawsuit for declaratory judgment. 28 U.S.C. § 2201. *See also AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). Instead, "[d]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* (quoting *Wilton*, 515 U.S. at 282).

The Sixth Circuit has enunciated a five-factor test (commonly referred to as the "*Grand Trunk* factors*"*) that district courts must utilize to determine if jurisdiction is proper under § 2201:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Id.* at 785 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)); *see also, e.g., United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019). Although the above formulation indicates that courts should balance the five factors, the Sixth Circuit has never indicated the relative weights of the factors. *See Cole's Place*, 936 F.3d at 396. Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). The Sixth Circuit has noted, in weighing these factors, "[d]istrict courts must be afforded substantial discretion to exercise jurisdiction 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and [the] fitness of the case for resolution, are peculiarly within their grasp.'" *Flowers*, 513 F.3d at 554 (quoting *Wilton,* 515 U.S. at 289 (1995)).

**III. Analysis**

Fire-Dex argues that the *Grand Trunk* factors weigh against exercising jurisdiction here. (Doc. No. 8, PageID# 410.) Specifically, Fire-Dex urges the Court to decline jurisdiction due to federalism concerns. (*Id.*) Fire-Dex argues that resolution of the insurance coverage issues with respect to the Occupational Disease and Total Pollution Exclusions involve novel and unsettled matters of state law and, therefore, an Ohio state court is the preferred forum for resolution of these issues in the first instance. (*Id.*)

7

In its Opposition, Admiral argues that Fire-Dex cannot meet its burden of proof with respect to the *Grand Trunk* factors because Fire-Dex admits that the first three factors are neutral, and Fire-Dex must prove that this Court is "clearly inferior" under the fourth and fifth factors, which Fire-Dex cannot do. (Doc. No. 9, PageID# 432.) In response to Fire-Dex's federalism arguments, Admiral contends there is nothing novel about asking this Court to apply the term "occupational disease" under the Admiral policies. Admiral argues that Ohio courts have applied the definition of "occupational disease" for nearly 50 years and that this is a garden-variety insurance coverage dispute that may be properly decided by this Court. (*Id.* at PageID# 433.)

The Court will address each *Grand Trunk* factor below.

### A. Whether the Judgment Would Settle the Controversy

In the context of insurance coverage disputes, the Sixth Circuit "has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Flowers*, 513 F.3d at 556. See also *West Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 396 (6th Cir. 2006) (affirming the district court's decision to exercise jurisdiction over the insurance coverage dispute, even though the state court tort action focused on alleged negligence in the operation of a sailboat); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) (explaining that while a declaratory judgment would not settle the controversy between the state parties, it would settle the insurance coverage between Northland and the insured).

The Court concludes this factor weighs in favor of exercising jurisdiction. A declaratory judgment would settle the controversy between Admiral and Fire-Dex, even if it does not resolve the firefighters' underlying claims against Fire-Dex. *See Flowers*, 515 F.3d at 556. Indeed, both parties

agree that a declaratory judgment would settle the controversy between Admiral and Fire-Dex as to the scope of coverage. (*See* Doc. No. 8, PageID# 417-18, Doc. No. 9, PageID# 437.) Admiral and Fire-Dex are the only parties litigating this issue of insurance coverage and a declaratory judgment would resolve that issue. *See Cole's Place*, 936 F.3d at 397.

However, for the reasons discussed below, the Court concludes that this factor should be afforded little weight in its overall analysis of the *Grand Trunk* factors. Admiral relies on the Sixth Circuit's decision in *Cole's Place* to support its argument that the first factor weighs in favor of exercising jurisdiction. While the Court agrees that the first factor supports exercising jurisdiction, the Court observes that the circumstances in *Cole's Place* were markedly different than the instant dispute. In *Cole's Place*, the Sixth Circuit, in analyzing the first factor, observed that "the application of Kentucky law to the coverage issue is straightforward." *Id.* The Sixth Circuit concluded that under "these circumstances, efficiency considerations favor the exercise of federal jurisdiction, and fairness and federalism concerns do not counsel against it." *Id.* (citing *Hoey*, 773 F.3d at 759). Conversely, the application of Ohio law to the instant coverage dispute is far from straightforward because no Ohio court has yet ruled on these issues. Accordingly, while this factor weighs in favor of exercising jurisdiction, it is ultimately outweighed by federalism considerations. *Id.*

### B. Whether the Declaratory Judgment Action Would Serve a Useful Purpose in Clarifying the Legal Relations at Issue

Analysis of the second factor is closely tied to the first. *Flowers*, 513 F.3d at 557. The Sixth Circuit has held that it is not an abuse of "discretion in concluding that a declaratory judgment would settle the controversy by resolving the issue of indemnity." *Cole's Place*, 936 F.3d at 397; *cf. Bituminous*, 373 F.3d at 814.

9

The Court concludes that the second factor also weighs in favor of exercising jurisdiction. As explained above, the instant declaratory judgment action will settle the controversy as to coverage between Admiral and Fire-Dex. The second factor involves evaluating whether the relationships between the parties in the declaratory judgment will be clarified. *See Northland*, 327 F.3d at 454; *Flowers*, 513 F.3d at 557. The answer here is yes: a declaratory judgment construing the policies will establish whether Admiral is obligated to defend and/or indemnify Fire-Dex. Thus, the second factor also weighs in favor of exercising jurisdiction. However, as with the first factor, in the Court's final analysis, the second factor is also outweighed by the fourth and fifth factors. *See infra.*

### C. Whether the Declaratory Judgment Action is Motivated by "Procedural Fencing"

"'Procedural fencing' refers to 'a range of tactics that courts regard as unfair or unseemly,' including selecting a forum to start a race for res judicata." *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co.*, 29 F.4th 792, 797 (6th Cir. 2022) (quoting *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 761 (6th Cir. 2014)). This factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank*, 386 F.3d at 788). The important question is "whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *AmSouth Bank*, 386 F.3d at 789. The Sixth Circuit has been hesitant to assign the plaintiff with an "improper motive . . . where there is no evidence of such in the record." *Flowers*, 513 F.3d at 558. Additionally, when the declaratory judgment action is filed after the state court action, the plaintiff generally receives the benefit of the doubt that no improper motive exists. *Bituminous*, 373 F.3d at 814.

Here, there is no evidence that Admiral raced to the federal courthouse to attain a more favorable decision. Fire-Dex proffers no evidence that Admiral raced to the courthouse to obtain jurisdiction or otherwise had an improper motive in seeking a declaratory judgment, but only asserts that Admiral filed its declaratory judgment action before providing Fire-Dex with its written coverage position. (Doc. No. 8, PageID# 419, Doc. No. 10, PageID# 456.) Without any evidentiary showing, the Court will not infer "procedural fencing" on Admiral's part. Accordingly, the third factor is neutral. *See Cardinal Health*, 29 F.4th at 797 (in cases with no evidence of procedural fencing, the Sixth Circuit often finds the third factor to be neutral).

**D.     Whether the Use of a Declaratory Action Would Increase Friction Between Federal and State Courts and Improperly Encroach on State Jurisdiction**

The Sixth Circuit has divided this factor into three sub-factors: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Flowers*, 513 F.3d at 560. The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id*. The second sub-factor asks "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id*. This factor weighs against an exercise of jurisdiction when there are "novel questions of state law." *Id*. The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Id*.

In cases of insurance contract interpretation, the Sixth Circuit has previously held that such issues are "'questions of state law with which the . . . state courts are more familiar and, therefore, better able to resolve.'" *Id.* (quoting *Travelers*, 495 F.3d at 273). However, the Sixth Circuit has also noted that "not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." *Id.* (citing *Northland*, 327 F.3d at 454 (finding that, while the declaratory judgment action seeking a determination of the policy's scope was governed by state law, "no state law or policy would be frustrated by the district court's exercise of jurisdiction, which would require the application of [state] law")).

1. **First Sub-factor**

"The first subfactor 'focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action.'" *Cardinal Health*, 29 F.4th at 799 (quoting *Flowers*, 513 F.3d at 560).

Recently, the Sixth Circuit thoroughly addressed each of the three sub-factors in *Cardinal Health v. Nat'l Union Fire Ins. Co. of Pittsburgh*. There, insurer National Union asked the Sixth Circuit to review a district court's decision to remand Cardinal Health's declaratory judgment action back to Ohio state court. *Id.* at 796. In its complaint, Cardinal Health brought a single claim for declaratory judgment, "seeking declarations related to the rights and obligations of the parties under the policies, including whether National Union has a duty to defend Cardinal Health or pay Cardinal Health's defense costs in the opioid litigation, whether Cardinal Health can select the policy or policies to provide coverage for the various lawsuits, and the establishment of certain disputed terms under the policy." *Id.*

Regarding the first sub-factor, National Union asserted that because there was no underlying state case running parallel to its dispute with Cardinal Health, there were no comity concerns. Therefore, according to National Union, the Sixth Circuit should conclude that the first sub-factor weighed in favor of exercising jurisdiction. *Id.* at 799. However, the Sixth Circuit disagreed:

> When parties seek "a declaration of the scope of insurance coverage, we have recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Id.* However, this subfactor points against exercising jurisdiction when "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* National Union is correct in asserting there is "no underlying state court case running parallel to this action" between these parties. CA6 R. 21, Appellant Br., at 21. National Union is incorrect, however, in suggesting that there are no comity concerns due to the lack of a parallel state proceeding. Comity is not so narrow. Ohio state courts are currently applying the insurance provisions at issue to emerging questions about the scope of insurance coverage in relation to the opioid epidemic. For example, these parties dispute whether the conduct alleged by the opioid plaintiffs—failing to report or detect orders of suspicious or excessive orders of opioids, failing to stop the fulfillment of such orders, and failing to oppose improper conduct of other defendants in the opioid litigation—constitutes an "occurrence" under the policy. *See Cardinal Health, Inc.*, 2021 WL 3184947, at *9; DE 1-2, Compl., Page ID 15. **These dynamic questions and theories of liability under Ohio state law implicate concerns of comity, and it is not an abuse of discretion for a district court to hold they first need to be decided by Ohio state courts.**

*Id.* (emphasis added).

The Court concludes that the first sub-factor weighs against exercising jurisdiction. Admiral asks this Court to apply the Occupational Disease Exclusion and/or the Total Pollution Exclusion to conclude that the policies do not provide a duty to defend or indemnify Fire-Dex for PFAS-related claims in the underlying lawsuits. (Doc. No. 19, ¶¶ 41, 58.) However, after an exhaustive search, the Court was unable to locate a single case (and the parties did not identify any case) in which an Ohio state court (or any court) applied an occupational disease and/or pollution exclusion to the facts presented in the instant case. Specifically, there are no cases in which any state court concluded that

an occupational disease and/or pollution exclusion either does or does not obligate an insurer to defend and/or indemnify an insured for PFAS exposure-related claims. Indeed, in the Court's review, only one court, the Connecticut Supreme Court, has applied an occupational disease exclusion to claims by a third-party's employees who contracted occupational diseases in the course of work for other employers who were not the insured. *See R.T. Vanderbilt Co., Inc. v. Hartford Accident and Indemnity Co.*, 333 Conn. 343 (2019). Further, even though *R.T. Vanderbilt Co.* addressed a similar occupational disease exclusion, it ultimately involved a different underlying factual scenario involving asbestos-related injuries allegedly caused by exposure to talc and silica, not cancers allegedly caused by PFAS exposure. *Id.*

As the Sixth Circuit pointed out in *Cardinal Health*, "comity is not so narrow" as to only be a concern when there is an ongoing parallel state court proceeding. *Cardinal Health*, 29 F.4th at 799. Though Ohio state and federal courts have heard many cases involving PFAS-related bodily injury claims, no Ohio state court has yet weighed in on the "dynamic questions and theories of liability" at work in the instant dispute. *Id.* Specifically, no Ohio state court has been asked to apply the definition of "occupational disease" to evaluate affording coverage for alleged occupational injuries to a third-party's employee and/or his or her spouse, due to alleged PFAS exposure from the insured's products. In the interest of comity, the Court concludes it is better for Ohio state courts to address these issues first. *Id.*

### 2. Second Sub-factor

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. In *Flowers*, the Sixth Circuit indicated that consideration of this factor usually involves the question of whether novel issues of

state law are raised in the declaratory action. *Id.* District courts need not turn away declaratory judgment actions when an undetermined question of state law is presented, but it is an appropriate consideration for district courts to weigh when deciding whether to exercise their discretion. *Cardinal Health*, 29 F.4th at 799 (citing *Flowers*, 513 F.3d at 560). Further, if the state law is clear and the state court is not considering the issues, this subfactor has less force. *Id.* However, where it is unclear how a state court would resolve an issue of state law, the Sixth Circuit has held that "states are in a better position to resolve insurance issues governed by state law." *Mass. Bay*, 759 F. App'x at 440; *see also Bituminous*, 373 F.3d at 815-16; *Cardinal Health*, 29 F.4th at 800.

The Court concludes the second sub-factor weighs heavily against exercising jurisdiction. No Ohio state court has ruled on any case involving the intersection of PFAS exposure, insurance coverage claims, and the effects of policy exclusions like the Occupational Disease Exclusion and/or the Total Pollution Exclusion. Moreover, the Court did not find—and the parties did not identify—any factual scenarios addressed in any Ohio decisions that this Court could reasonably analogize to the instant dispute over PFAS exposure claims brought by a third-party's employees and/or their spouses. *See Cardinal Health*, 29 F.4th at 800 (noting that while the questions raised in Cardinal Health's declaratory judgment "are well addressed in many factual scenarios, those factual scenarios do not clearly analogize to opioid distribution").

The Court also disagrees with Admiral's assertion that it could reasonably predict how Ohio state courts would rule on this issue by relying on the definition of "occupational disease." (Doc. No. 9, PageID# 447.) This term has been developed in the context of worker compensation cases, *see, e.g., State ex rel. Ohio Bell Tel. Co. v. Krise*, 42 Ohio St.2d 247 (1975), and this Court located no cases where an Ohio state court applied it to an insurance policy exclusion that purported to exclude

15

coverage for occupational disease claims brought by a third-party's employees and/or their spouses. "This indicates that [this Court] is not in a position to reasonably predict how Ohio state courts will answer questions in this case." *Cardinal Health*, 29 F.4th at 800.

Regarding the Total Pollution Exclusion, Fire-Dex argues that it believes an Ohio court would extend the reasoning announced in *Andersen v. Highland House Co.* to claims regarding PFAS-containing products to conclude that the pollution exclusion does not apply to the underlying third-party claims. (Doc. No. 8, PageID# 422-23.) In *Andersen*, the Ohio Supreme Court broadly concluded that carbon monoxide emitted from a malfunctioning residential heater is not a pollutant under the pollution-exclusion clause "unless specifically enumerated as such." 93 Ohio St.3d 547, 552 (2001). In a roundabout way, then, Fire-Dex concedes that the Ohio Supreme Court *has* weighed in on the application of pollution exclusion clauses. Indeed, Admiral asserts in a footnote that the issues raised by the pollution exclusion clause "are not novel issues under Ohio law." (Doc. No. 9, PageID# 448.)

However, in *Citizens Ins. v. Lanly Co.*, another court in this district considered whether to exercise jurisdiction over a declaratory judgment action in which an insurer asserted that a pollution exclusion clause did not obligate it to defend or indemnify the insured in underlying state cases involving workplace asbestos exposure. Nos. 1:07-CV-241, 1:07-CV-467, 1:0- CV-469, 2007 WL 3129783, at *3-5 (N.D. Ohio Oct. 23, 2007). In *Citizens*, the district court concluded that *Andersen* was not on point because it involved residential carbon monoxide poisoning while the case before it involved industrial asbestos poisoning. *Id.* at *4. The court pointed out that the *Andersen* court's "use of broad language to decide a fairly narrow question has proved problematic in *Andersen*'s wake," and that lower Ohio courts had issued conflicting rulings, both determining that asbestos was,

and was not, a pollutant for purposes of pollution-exclusion clauses. *Id.* at *5. The district court concluded that, where there was no Ohio Supreme Court opinion on point, and the state appellate court opinions appeared unsettled, the district court should decline to exercise jurisdiction over "an unsettled issue of insurance law with potentially far-reaching consequences." *Id.*

The Court believes that *Citizens*' rationale is persuasive. Though there is Ohio Supreme Court caselaw on pollution exclusion clauses, *Andersen* involved residential, rather than industrial, pollution, and carbon monoxide, rather than PFAS, exposure. Moreover, the Court did not locate, and the parties did not identify, any cases in which the Ohio Supreme Court or lower Ohio appellate courts applied a pollution exclusion clause to claims brought by a third-party's employees and/or their spouses for injuries caused by industrial PFAS exposure. Like in *Citizens*, the Court concludes that this is an unsettled issue of Ohio insurance law with potentially far-reaching consequences and should be decided by Ohio courts. *Citizens*, 2007 WL 3129783 at *5.

Based on these unresolved issues of Ohio insurance law, and the Sixth Circuit's clear guidance that "states are in a better position to resolve insurance issues governed by state law," *Mass. Bay*, 759 Fed. App'x at 440, the Court concludes that the second sub-factor also weighs heavily against exercising jurisdiction.

### 3. Third Sub-factor

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. The resolution of this declaratory judgment action is not mandated by federal common or statutory law. Rather, "[s]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such a

17

regulation," *Bituminous*, 373 F.3d at 815 (quoting *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990)). Therefore, there is a close nexus between the legal issues and state public policy. *See, e.g., W. World Ins. Co. Assoc., Inc. v. Amgad William Abdou, M.D.*, No. 1:12-cv-2719, 2013 WL 12131308, at *6 (N.D. Ohio Aug. 7, 2013).

The Court concludes the third sub-factor weighs against exercising jurisdiction. There are no federal issues here, only novel issues of state insurance law as discussed at length above. *See supra*. The Sixth Circuit has indicated that when this is the case, the third sub-factor weighs against exercising jurisdiction. *See Cardinal Health*, 29 F.4th at 800 (concluding the third sub-factor weighed against exercising jurisdiction where Ohio courts were considering "the same unsettled legal issues of state law necessary to the resolution of this coverage dispute"); *Mass. Bay*, 759 Fed. App'x at 440 (holding that when "no federal laws are at issue," the third sub-factor "weighs against exercising jurisdiction").

After reviewing the three sub-factors, relevant policy exclusions, and caselaw, as well as the dearth of caselaw involving PFAS and the instant exclusions, it is clear to the Court that the use of a declaratory judgment would unnecessarily increase friction between the federal and state courts and improperly encroach on state jurisdiction by deciding unsettled issues of state insurance law. The Court concludes that the fourth factor weighs heavily against exercising jurisdiction.

### E. Whether an Alternative Remedy is Better or More Effective

The final factor asks whether there are any alternative and better remedies available to Admiral. The Sixth Circuit has indicated that a district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. A state declaratory judgment action and an indemnity action after the end of the state claim are both alternative remedies

to a federal declaratory judgment action.  *See Bituminous*, 373 F.3d at 816; *Travelers*, 495 F.3d at 273.  However, an alternative remedy is not necessarily a better remedy. *Flowers*, 513 F.3d at 562 ("[I]t is not clear whether such alternative remedies are better or more effective than a federal declaratory action.").

The Court concludes that this factor weighs heavily against exercising jurisdiction.  There is an alternative remedy better than litigation in a federal court: a declaratory judgment action in an Ohio state court.  There, the state court would have the opportunity to fully consider whether the Occupational Disease Exclusion and/or the Total Pollution Exclusion bar coverage for the PFAS-related claims in the underlying lawsuits.  The Court disagrees with Admiral's argument that the remedy of an Ohio declaratory judgment action is merely an alternative, but not more effective, remedy to a federal court declaratory judgment action.  (*See* Doc. No.9, PageID# 449.)  An Ohio declaratory judgment action is a superior remedy because it allows the parties to ask Ohio courts to adjudicate these novel state law issues in the first instance.  Moreover, this case involves solely state issues of law, which weighs further against exercising federal jurisdiction here.  *See Cardinal Health*, 29 F.4th at 801.  In the interest of federalism, the Court concludes that this factor weighs strongly against exercising jurisdiction over this case.  *Id.*

### F. Weighing the Factors

The Sixth Circuit has not indicated how district courts should weigh the five *Grand Trunk* factors when deciding whether to exercise jurisdiction over a declaratory judgment action.  *Id.* Instead, the relative weight of the considerations of efficiency, fairness, and federalism will depend on the facts of each case.  *Id.* (citing *Hoey*, 773 F.3d at 759).  Here, factors one and two weigh in favor of exercising jurisdiction, factor three is neutral, and factors four and five weigh heavily against

exercising jurisdiction due to the unsettled nature of the state insurance questions presented in Admiral's Amended Complaint. Because factors four and five so heavily outweigh factors one through three, the Court, in its discretion, chooses not to exercise jurisdiction over these novel questions of Ohio insurance law. *See Scottsdale*, 211 F.3d at 968-69 (affirming a district court's decision to decline jurisdiction where only the fourth factor weighed against exercising jurisdiction). In the interest of federalism, the Court believes these novel questions of law are best reserved for the Ohio state courts to answer in the first instance.

## IV.     Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED.

**IT IS SO ORDERED.**

Date:  October 31, 2022

 *s/Pamela A. Barker*  
PAMELA A. BARKER  
U. S. DISTRICT JUDGE